IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benjamin Kinard, #317717, ) | |
| ) | Civil Action No. 6:10-2745-TLW-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Director John Ozmint; Assoc. Warden ) | |
| Linda Bradshaw; Ms. Cook, Kitchen ) | |
| Supervisor; Individually and in Their ) | |
| Official Capacities ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion to dismiss (doc. 20). The plaintiff, a former state prisoner who is proceeding *pro se*, alleges that while he was an inmate at Turbeville Correctional Institution he found pieces of glass in his food. He claims he chewed and swallowed a piece of glass causing injury to his throat and mouth.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On December 23, 2010, the defendants filed a motion to dismiss or, in the alternative, for a more definite statement. On December 28, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to respond adequately. On February 28, 2011, the plaintiff filed his response to the motion to dismiss. The defendants filed a reply on March 8, 2011.

The plaintiff makes the following factual allegations in his complaint:

> On April 12, 2010, I inmate Benjamin Kinard was eating breakfast with my dorm in the café at Turbeville Correctional Institution. When I started eating my "grits," there was small pieces of glass in my food that I chewed and swallowed. I spit

> a piece out of my mouth and reported the glass that was in my food to Sergeant Singleton. The café Sergeant escorted me to the "kitchen supervisor," Ms. Cook. I complain to both staff members that my throat was in pain and I could taste blood in my mouth. Both Ms. Cook and Sgt. Singleton examine the fragments found in my grits and decided it was glass, indeed. Sgt. Singleton escorted me to the medical station at Turbeville Corrections. I was seen by Nurse Wendy Sharp, RN. I reported to the nurse about the pain in my throat and mouth. I was given light bread and water. I was sent back to my dorm after the examine [sic], but had to return to medical several more [times] because of more blooding [sic].
>
> On April 13, 2010, I was seen by Nurse Blake, RNP. She order for me to take mineral oil and continue to eat light bread to coat my stomach. She and a male nurse confirmed that I swallow glass. Upon information and belief Nurse Blake, RNP, had the class sent to a lab, but was told that the investigator of the prison had to get it tested to confirm the type of glass that was used. . . .

(Comp. at 3-4).

The plaintiff further alleges that he filed a grievance on April 12, 2010, but the grievance coordinator refused to return his Step 2 grievance. On May 28, 2010, he was told the grievance was denied (*id.* at 5)

The plaintiff names as defendants John Ozmint, the former Director of the South Carolina Department of Corrections ("SCDC"); Linda Bradshaw, the Associate Warden at Turbeville; and Ms. Cook, the Kitchen Supervisor at Turbeville. The plaintiff alleges "unsafe conditions of eating, attempt of murder, violated plaintiff Benjamin Kinard's rights and constituted grossly negligent, cruel and unusual punishment, equal protection, and deliberate indifference under the Eighth and Fourteenth Amendments . . . " (Comp. at 6). He seeks a declaration that the defendants' actions violated his rights, compensatory damages of $150,000 against each defendant, and punitive damages of $150,000 against each defendant (*id.* at 6).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted. Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Furthermore, a complaint is insufficient if it provides bare assertions lacking additional factual support. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *See De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (*citing Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

The pleadings of a *pro se* party are entitled to liberal construction and are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). "The liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, or construct the plaintiff's legal arguments for him, or 'conjure up

3

questions never squarely presented' to the court." *Leneau v. Aplin*, C.A. No. 4:09-932-CMC-TER, 2009 WL 1749430, at *2 (D.S.C. Jun. 22, 2009) (slip copy) (*quoting Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)) (internal citations omitted). "The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *Id.* (*citing Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390-91 (4th Cir. 1990)).

The defendants first argue that they are not considered "persons" under Section 1983 for purposes of claims brought against them in their official capacities. This court agrees. Section 1983 authorizes assertion of a claim for relief against a "person" who acted under color of state law. The Supreme Court has held that state agencies, divisions, departments, and officials are not "persons" under Section 1983 and are entitled to Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 85, 70-71 (1989). Although a state may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613, 619 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e). When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. Here, a review of the complaint makes clear that the State of South Carolina is the party being sued by the plaintiff. Accordingly, the defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

The defendants next argue that they are individually immune from suit based upon a claim of negligence under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq.* An employee who commits a state common law tort within the scope of his or her employment is normally protected from individual liability. S.C. Code Ann. §

4

15-78-70(a). The statute further provides that an employee is not immune from suit where he or she acts outside the scope of employment or with "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." *Id.* § 15-78-70(b). Here, the plaintiff has not alleged that the defendants were acting outside the scope of their official duties with the SCDC, and he has not alleged that the named defendants themselves acted with an intent to harm him or with actual malice. Accordingly, the state tort causes of action alleged against the defendants should be dismissed.

The defendants further argue that they are entitled to a defense of qualified immunity as the plaintiff has failed to allege a knowing violation of his constitutional rights. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

The plaintiff does not allege that any named defendant placed the glass in his food. Furthermore, the plaintiff does not allege that the defendants had any reason to know

5

that there was glass in his food prior to him eating it. The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) (parallel citations omitted).

Based upon the foregoing, the plaintiff has failed to allege the defendants engaged in conduct that constitutes a violation of the Eighth Amendment for failure to protect him from a substantial risk of harm.

The plaintiff's complaint has also been construed to allege a claim for deliberate indifference to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate

medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Here, the plaintiff alleges that when he swallowed the glass he was immediately taken to the medical station, where a nurse gave him light bread and water. He was seen by a nurse again the next day and was told to take mineral oil and to continue to eat light bread (comp. at 4). In his response in opposition to the motion to dismiss, the plaintiff complains that he was not given pain medication or the bread he was told to eat (pl. resp. m. to dismiss at 1-2). He does not name any member of the medical staff as a defendant in this action, and he does not allege that any of the named defendants personally acted or failed to act in violation of his constitutional rights in this regard. *See*

7

*Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). In order to bring a claim alleging denial of medical treatment against non-medical supervisory prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). The plaintiff has made no such allegations against the defendants here. Accordingly, the plaintiff has failed to allege the defendants engaged in conduct that constitutes a violation of the Eighth Amendment for deliberate indifference to a serious medical need.

Based upon the foregoing, this court finds that the defendants are entitled to qualified immunity on the plaintiff's constitutional claims.

Lastly, the defendants argue that there are no allegations against defendant Ozmint that would give rise to a cause of action under state or federal law. This court agrees. Defendant Ozmint, the former Director of SCDC, is described by the plaintiff as being "legally responsible for the overall operation of the [SCDC] and each institution under its jurisdiction . . . " (comp. at 3). The plaintiff does not allege that defendant Ozmint acted personally in the deprivation of his rights. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. A plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff's complaint contains no facts regarding defendant Ozmint that would satisfy the above criteria. Therefore, defendant Ozmint is not

liable in his capacity as supervisor or Director of SCDC, and the complaint against him should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion to dismiss for failure to state a claim (doc. 20) should be granted.

s/Kevin F. McDonald  
United States Magistrate Judge

June 1, 2011  
Greenville, South Carolina